**1922-CC11675**

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

## MISSOURI CIRCUIT COURT
## TWENTY-SECOND JUDICIAL CIRCUIT
## ST. LOUIS CITY

| | |
|---|---|
| **AIMEE L. WAHLERS, individually and as the surviving mother of Decedent, KATLYN NICOLE ALIX, deceased**<br><br>  **Plaintiff,**<br><br>**vs.**<br><br>**NATHANIEL HENDREN, in his individual and official capacity,**<br>Serve: 1915 Olive Street<br>  St. Louis, MO 63103<br><br>**and**<br><br>**PATRICK RIORDAN, in his individual and official capacity,**<br>Serve: 1915 Olive Street<br>  St. Louis, MO 63103<br><br>**and**<br><br>**SERGEANT GARY FOSTER, in his individual and official capacity,**<br>Serve: 1915 Olive Street<br>  St. Louis, MO 63103<br><br>**and**<br><br>**THE CITY OF ST. LOUIS**<br>Serve: Julian Bush<br>  1200 Market, Room 314<br>  St. Louis, MO 63103<br><br>  **Defendants.** | Cause No.:<br><br><br>Division No. |

## <u>PETITION</u>

Plaintiff Aimee Wahlers files this Petition against Defendants Officer Nathaniel Hendren,

Officer Patrick Riordan, Sergeant Gary Foster, and The City of St. Louis.



Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**INTRODUCTION**

1.     This is a wrongful death and civil rights action seeking compensatory and punitive damages arising out of the reckless, willful, malicious, corrupt and senseless killing of 24-year-old Officer Katlyn Nicole Alix ("Officer Alix").

**PARTIES**

2.     At all times relevant, Officer Alix was a citizen and resident of the State of Missouri.

3.     Plaintiff Aimee L. Wahlers, at all times relevant, was a citizen and resident of the State of Missouri.

4.     Ms. Wahlers is the surviving natural mother of Officer Alix, and brings this action, in part, pursuant to Mo. Rev. Stat. § 537.080, commonly referred to as the "Missouri Wrongful Death Statute," on behalf of herself and all persons entitled to recover under said statute.

5.     Ms. Wahlers is the proper party to bring this action for the wrongful death of her daughter Officer Alix, and seeks all wrongful death damages available to her under both state and federal law.

6.     At all times relevant, Defendant Officer Nathaniel Hendren ("Defendant Hendren") was a citizen and resident of the State of Missouri. Defendant Hendren was a district police officer employed by the City of St. Louis. At all times mentioned herein, he was on duty and working in the course and scope of his employment. At all times mentioned herein, Defendant Hendren was required by Saint Louis Police Department policy to "constantly patrol his/her beat," was not allowed to "lounge, loaf or gather with others at any other place," and was prohibited from acting recklessly with firearms[1] Defendant Hendren is sued in his individual and official capacity.

---

[1] Ex. 1, SO 2-12, p. IV-3

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

7.      At all times relevant, Defendant Officer Patrick Riordan ("Defendant Riordan") was a citizen and resident of the State of Missouri. Defendant Riordan was a district police officer employed by the City of St. Louis. At all times mentioned herein, he was on duty and working in the course and scope of his employment. At all times mentioned herein, Defendant Hendren was required by St. Louis Police Department Policy to "constantly patrol his/her beat," and was not allowed to "lounge, loaf or gather with others at any other place."[2] Defendant Riordan is sued in his individual and official capacity.

8.      At all times relevant, Defendant Sergeant Gary Foster ("Defendant Foster") was a citizen and resident of the State of Missouri. Defendant Foster was a police officer employed by the City of St. Louis. At all times mentioned herein, he was on duty and working in the course and scope of his employment. At all times mentioned herein, Defendant Foster was empowered and required to "exercise authority and have responsibility over the Sergeants and officers of their platoon."[3] Defendant Foster was required to exercise constant vigilance over officers under his control, including Defendants Hendren and Riordan.  Defendant Foster's duties "include[d], but [were] not limited to: supervision of roll call, with inspection of officers going on duty, being concerned with the appearance of officers, their equipment, and their knowledge of their assignments and duties, continuing observation of the performance of their Sergeants and officers during their hours of duty."[4] Defendant Foster is sued in his individual and official capacity.

9.      At all times relevant, The City of St. Louis ("The City") is a constitutional charter city pursuant to Article VI, Section 19 of the Missouri Constitution, and as such, has the capacity to sue and be sued. The City of St. Louis is authorized by law to maintain a Police Department,

---

[2] Ex. 1, SO 2-12, p. IV-3
[3] Ex. 1, SO 2-12, p. IV-2, IV-3
[4] Ex. 1, SO 2-12, p. IV-2, IV-3

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

the St. Louis Police Department, which serves as the vehicle by which the City of St. Louis fulfills its policing function, and for which the City of St. Louis is ultimately responsible. At all times relevant, The City was responsible for hiring, training, retaining, and supervising Defendants Hendren, Riordan, and Foster. At all times mentioned herein, The City acted through its agents, servants and employees who acted within the course and scope of their employment.

## VENUE AND JURISDICTION

10.    Venue is proper in the Circuit Court of St. Louis City pursuant to MO. REV. STAT. § 508.010 because Officer Katlyn Alix was first injured in St. Louis City, Missouri.

11.    This Court is empowered with concurrent jurisdiction to entertain suits brought under the Federal Civil Rights Act, 42 U.S.C. § 1983. *Duvall v. Lawrence*, 86 S.W.3d 74, 81 (Mo.App.E.D.2002) (citing *Stafford v. Muster*, 582 S.W.2d 670, 681 (Mo. 1979).

## FACTUAL ALLEGATIONS

12.    Katlyn Nicole Alix was born on March 12, 1994 to Aimee Wahlers and Ron Alix.

13.    In 2012, she graduated from Holt High School in Wentzville, Missouri.

14.    Upon graduation, she entered the U.S. military. She served as a corporal in the United States Army Reserve military police for four (4) years. After four years in the military, Officer Alix returned to St. Louis and entered the St. Louis City Police Academy in 2016.

15.    Officer Alix graduated from the St. Louis City Police Academy in January 2017.

16.    Officer Alix was assistant Class President.

4

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM



PO Alix, front and center with her 2016-02 class

17.    The City of St. Louis is divided into three Area Patrol Stations and six Police Districts. The 1st and 2nd Districts are housed in "South Patrol"; the 3rd and 4th Districts are housed in "Central Patrol"; and the 5th and 6th Districts are housed in "North Patrol."



18.    Upon graduation from the St. Louis City Police Academy, Officer Alix was assigned to the 6th District. Shortly before she was killed, she was transferred to the 2nd District.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

Upon information and belief, she served in District 2 for a little more than a month before she was killed.

19.     Defendant Hendren was born on October 11, 1989.

20.     Defendant Hendren entered the United States Marine Corp. on or about 2008.

21.     Defendant Hendren exited the United States Marine Corp. on or about 2012 and thereafter attended college at the University of Missouri Columbia.

22.     Prior to being hired by the City of St. Louis, Defendant Hendren had a complicated psychiatric history, including but not limited to anxiety and depression, Post-Traumatic Stress Disorder, and suicidal ideations and gestures.

23.     Defendant Hendren would, on occasion, put a loaded gun in his mouth and up to his head when alone, "just to feel something."

24.     Defendant Hendren on occasion had thoughts about driving his car and intentionally getting into an accident, because "that is one way that he would be scared of dying."

25.     Defendant Hendren had a history of acting recklessly with firearms, forcing previous girlfriends to play "Russian Roulette," and engage in other sexual activity that involved firearms.

26.     Defendant Hendren suffered from substance abuse issues, including alcohol.

27.     The full extent of Defendant Hendren's past psychiatric and disciplinary history cannot be known, as The City of Saint Louis has refused to provide the Alix family access to the disciplinary or employment files of Nathaniel Hendren, claiming that such records of an officer accused of criminal conduct are closed records under Missouri's sunshine laws.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

28.     Defendant The City of Saint Louis knew or should have known about Defendant Hendren's psychiatric history, substance abuse problems, and tendency to act recklessly with firearms prior to enlisting him as an armed police officer.

29.     Despite his past and psychiatric history, Defendant Hendren applied and was accepted to the St. Louis Police Academy, and ultimately joined the St. Louis City Police Department in November 2017.

30.     Defendant Hendren was a St. Louis City Police Officer assigned to District 2.

31.     Defendant Riordan applied to and was accepted to the St. Louis Police Academy, and ultimately joined the St. Louis City Police Department in April 2017.

32.     Defendant Riordan was a St. Louis City Police Officer assigned to District 2.

33.     Officer Alix, at the time of her death, was married to Anthony Meyer, a St. Louis City Police Officer. They had been married for approximately 3 months.

34.     Prior to her death, Officer Alix and Anthony Meyer were having marital problems. Officer Alix was planning to divorce her husband before she died.

35.     Though she was married, Defendant Hendren openly engaged in a romantic relationship with Officer Alix. Defendants, at all times relevant, knew about and acquiesced in this relationship.

**JANUARY 23, 2019**

36.     On January 23, 2019, Officer Alix was 24 year old.

37.     She had been a police officer for about 2 years.

38.     She was off duty on the evening of January 23, 2019.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

39.     On January 23, 2019 at 5:04 PM, Officer Alix texted Defendant Hendren. She stated that she was going to come over to Defendant Hendren's apartment, at 750 Dover Place in St. Louis City to bring him medicine for his cold.

40.     Officer Alix went to Defendant Hendren's apartment.

41.     Officer Hendren was working the night shift on the 23rd.

42.     Defendant Hendren and Officer Alix reportedly made dinner together, and engaged in other yet to be determined activities.

43.     Despite having to work that night, Officer Hendren consumed a currently unknown quantity of alcohol before reporting for duty.

44.     His shift began with "roll call" at approximately 10:50 PM.

45.     Defendant Hendren and Defendant Riordan were partnered together and on duty in Vehicle 64, and were referred to together as Unit 3229.

46.     Vehicle 64, a police cruiser, was equipped with a global positioning device.

47.     SLMPD policy requires officers log in on the vehicle computer, in order to trigger the global positioning device.[5]

48.     SLMPD policy prohibits officers from "tampering with, or disabling the" GPS system in any way to prevent the proper functioning of the GPS system.[6]

49.     The GPS devices equipped on police vehicles enable the SLMPD, including Defendants Foster and the City of St. Louis, to track the exact location of police officers— including officers like Defendants Hendren and Riordan. GPS tracking helps departments dispatch officers closest to a call for service, and aids in coordinating pursuits and other operations.

---

[5] Ex. 2, SO 5-32, p. 1
[6] Ex. 2, SO 5-32, p. 1

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

50.     GPS tracking allows police dispatchers and supervisors to know where their on-duty officers are and how often they have moved through a designated patrol area.

51.     Defendant Hendren and Defendant Riordan did not log in and/or manipulated the GPS system such that their unit could not be tracked violating department policy.

52.     Defendant Foster did not, as SLMPD policy required, ensure that Defendant Hendren and Riordan, logged in to the vehicle's computer as required.

53.     Defendants knew, based on the absence of a GPS signal, that Defendants Hendren and Riordan had not logged in to Vehicle 64's GPS system, and willfully and maliciously chose to ignore a clear violation of department policy.

54.     Less than three (3) minutes after beginning their shift, Defendants Hendren and Riordan, acting with malice and corruption, chose to violate their departmental duties. Specifically the officers texted Officer Alix, telling her that they could use a "beginning of shift smoke," and asking her whereabouts.

55.     At 10:59 PM, Defendants Hendren and Riordan receive a call for an assault at 3229 Jamieson. They reported to the incident, arriving at 11:06 PM. At 11:15 PM, Defendants Hendren and Riordan canceled the call for the reported assault at Jamieson.

56.     At 11:39 PM, Defendant Riordan, acting with corruption, told Officer Alix to meet him and Defendant Hendren at Defendant Hendren's apartment at 750 Dover Place.

57.     750 Dover Place is located in District 1.

58.     Officers Hendren and Riordan were supposed to be on beat in District 2.

59.     Officer Alix, off duty, arrived at 750 Dover Place at 11:45 PM.

60.     At 11:49 PM, Officers Hendren and Riordan received a call for an "Alarm" on the rear door of a building located at 6512 Manchester.

9

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

61.     Officers Hendren and Riordan, ignoring the call, arrived at 750 Dover place approximately 11:50 PM.

62.     At 11:52 PM, Defendant Riordan, in violation of his departmental duties, texted Officer Phillip Vonderheydt, another St. Louis City Police Officer, and asked him via text message to go by the alarm and make sure everything is okay.

### JANUARY 24, 2019

63.     After going back and forth about why Defendants Hendren and Riordan were not responding to the call, Defendant Riordan stated via text at 12:08 AM: "Fuck it I'm just coding it." At 12:10 AM, Officer Vonderheydt replied via text, "WTF dude. What's so important you can't take this call? Call dispatch and say you are on something. And they send Parrish."

64.     Five minutes later, at 12:13 AM, Defendants Hendren and Riordan improperly coded the alarm call on Manchester an "F," or a false alarm.

65.     Failing to comply with department policies, Officer Hendren and Riordan proceeded to consume alcohol, and other unknown substances, at 750 Dover Place.

66.     Officer Alix, who was off duty, was intoxicated and vulnerable.

67.     Shortly thereafter, neighbors in the 750 Dover Place area reported hearing a "screaming fight," and yelling between a man and a woman.

68.     Officer Hendren took out his personal revolver.

69.     Officer Hendren proceeded to act recklessly with his firearm.

70.     Officer Hendren shot empty shots reportedly down the hallway.

71.     Officer Hendren then put one bullet in the chamber.

72.     Officer Hendren took the revolver, pointed it at Officer Alix's chest, and pulled the trigger. The bullet struck Officer Alix in the chest.

10

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

73.     After willfully and maliciously shooting Officer Alix, Officer Hendren approached her, and started carrying her down the stairs of his apartment to the street where Vehicle 64 was parked.

74.     Officer Riordan was in present of and observed Officer Hendren shoot Officer Alix.

75.     Defendant Riordan knew that Defendant Hendren's actions were reckless, outrageously dangerous, and likely to inflict physical harm and death upon Officer Alix, depriving her of her life and constitutional rights.

76.     Defendant Riordan, acting with cowardice unbecoming of a law enforcement officer, and violating department policy, deliberately failed to intervene to stop Defendant Hendren in any way.

77.     Officer Riordan ran down the stairs, ahead of Officer Hendren, to start the car.

78.     Officer Hendren allegedly dropped Officer Alix multiple times, and struggled to put her in the back seat of Vehicle 64.

79.     At 12:54 AM, Officer Riordan made a phone call to District 2 Dispatch that there was an "officer down" and they were at Colorado and Dover Place.

80.     At 12:56 AM, Vehicle 64 driven by Officer Riordan arrived at Saint Louis University Hospital.

81.     Sergeant William Clinton, a St. Louis City Police Officer, approached Vehicle 64 and saw Defendant Hendren soaked in blood.

82.     Defendant Hendren opened the rear door and Sergeant Clinton saw a white female lying on the back seat of the vehicle.

83.     The white female was Officer Alix.

84.     For an unknown reason, she was naked from the hips up.

11

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

85.     Her sports bra was pulled over her head.

86.     Defendants dragged her lifeless body into the hospital at 1:22 AM.

87.     At 1:23 AM, Defendant Hendren was escorted outside by Officer Vonderheydt. As he walked by a squad car, Defendant Hendren rammed his head through the rear windshield of Defendant Foster's SUV.

88.     Though Defendant Hendren was present at the hospital at 1:22 AM, he was not tested for drugs or alcohol until nearly 4:00 AM. At 3:58 AM, a blood alcohol test reported an ethanol level of 35.

89.     On January 24, 2019, Katlyn Nicole Alix having no signs of life, was shot killed and pronounced dead at St. Louis University Hospital. Her death is a direct result of the reckless, willful, wanton, corrupt, and malicious misconduct of Defendants.

### COUNT I
### ASSAULT & BATTERY
### DEFENDANT NATHANIEL HENDREN

90.     Plaintiff incorporates the above allegations as though fully set forth herein.

91.     On January 24, 2019, Defendant Nathaniel Hendren while intoxicated took a revolver, loaded it, pointed it at Katlyn Nicole Alix's heart and chest, pulled the trigger, and killed her. The bullet entered her right upper anterior chest and existed her back at or around her right 10th rib. His actions constituted an unlawful, intended, offensive bodily contact with Katlyn Alix without consent of justification.

92.     Defendant Nathaniel Hendren, in shooting Katlyn Alix, acted in his individual and official capacity willfully, with malice and/or corruption.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

93.     As a direct and proximate result of Defendant Hendren's reckless conduct and carelessness, Katlyn Alix was killed on January 24, 2019. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

94.     As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

95.     As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

96.     The conduct of Defendant Hendren as describe above was outrageous—conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Defendant's conduct exhibited an evil motive or reckless indifference to the rights of others, and a conscious disregard for the safety of others, thereby entitling Plaintiff to an award of aggravating circumstance damages.

97.     Defendants do not have sovereign immunity from liability for Defendant Hendren's conduct because Defendants have purchased insurance policies to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[7] By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[8] The PFPC covers the liability of Defendants in this case.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), which is just, fair, and adequate under the circumstances, for aggravating circumstances damages, and for her costs herein expended, and for such other relief as the Court deems just under the circumstances.

### COUNT II
### WRONGFUL DEATH—NEGLIGENCE
### NATHANIEL HENDREN

98.     Plaintiff incorporates the above allegations as though fully set forth herein.

99.     At all times relevant, Defendant Hendren owed a duty to exercise reasonable care of ordinary prudence under the same or similar circumstances. In addition, Defendant Hendren had a non-discretionary duty to comply with SLMPD rules and regulations, policies, procedures, standing orders, ordinances, and statutes such as:

---

[7] Ex. 3, Comprehensive Annual Financial Report,  p. 34
[8] Ex. 4, Letter from Julian Bush

14

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

a.  Defendant Hendren, while on beat, was required to: "constantly patrol his beat, except when on special assignments, and not lounge, loaf or gather with others at any place."[9]

b.  Defendant Hendren was required to exercise the highest degree of care in the application of deadly force.[10]

c.  Defendant Hendren was required to be alert and attentive to orders given by superior and fellow officers;[11]

d.  Defendant was required to refrain from acting recklessly with firearms;

e.  Defendant Hendren was required to refrain from engaging in acts of corruption;[12]

f.  Defendant Hendren was required to keep himself in the best mental condition at all times;[13]

g.  Defendant Hendren was required to refrain from engaging in "conduct unbecoming to a member which is contrary to the good order and discipline of the department," including "neglect of duty, improper performance of duty or sleeping or loafing while on duty."[14]

h.  Defendant Hendren was required to refrain from "reporting for duty in an intoxicated condition, or drinking of alcoholic beverages of any kind, while on duty."[15]

i.  Defendant Hendren was prohibited from using drugs during on duty periods.[16]

---

[9] Ex. 1, SO 2-12, p. IV-3
[10] Ex. 5, SO 1-07, p. 1
[11] Ex. 1, SO 2-12, p. IV-3
[12] Ex. 5, SO 1-07, p. 2
[13] Ex. 5, SO 1-07, p. 2
[14] Ex. 6, Police Manual (2014), Section 7.004, p. 7-1
[15] Ex. 6, Police Manual (2014), Section 7.004, p. 7-2
[16] Ex. 7, # 19 DOP Reg 120(B), p. 7

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

j.  Defendant Hendren was prohibited from fighting and/or quarreling with a department member, including Katlyn Nicole Alix, while on duty;[17]

k.  Defendant Hendren was required to log in to the GPS-based system in his department issued patrol vehicle;[18]

l.  Defendant Hendren was prohibited from tampering with his department-issued vehicle's GPS system;[19] and

m.  In addition, such further duties imposed by SLMPD department policy, regulation, standing order, ordinance, or statute as discovery and the evidence will reveal.

100.    Defendant Nathaniel Hendren failed to exercise reasonable care thereby breaching the above duties, and violating SLMPD policies, regulations, standing orders, ordinances, or statutes in one or more of the following respects:

a.  Defendant negligently and carelessly failed to patrol his beat;

b.  Defendant negligently and carelessly reported to work intoxicated;

c.  Defendant negligently and carelessly consumed alcoholic beverages and/or other intoxicating substances while on duty;

d.  Defendant negligently and carelessly failed to be "alert and attentive to the orders and instructions given" by his fellow and superior police officers;[20]

e.  Defendant negligently and carelessly handled a firearm while on duty;

f.  Defendant negligently and carelessly utilized deadly force;

g.  Defendant negligently and carelessly shot Katlyn Nicole Alix in the chest;

---

[17] Ex. 6, Police Manual (2014), Section 7.004, p. 7-2
[18] Ex. 2, SO 5-32, p. 1
[19] Ex. 2, SO 5-32, p. 1
[20] Ex. 1, SO 2-12, p. IV-3

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

h.  Defendant negligently and carelessly failed to obtain mental health care necessary to adequately and appropriately perform his departmental duty;

i.  Defendant negligently and carelessly neglected his departmental duties on the night and morning of January 23 and 24, 2019;

j.  Defendant negligently and carelessly failed to login to the GPS-based system in their department issued patrol vehicle on January 23, 2019;

k.  Defendant negligently and carelessly quarreled and/or fought with Decedent;

l.  Defendant negligently and carelessly loafed while on duty, engaging in inappropriate and reckless acts with a firearm; and

m.  Such further negligence and carelessness as discovery and the evidence will reveal.

101.    Defendant Hendren's actions described above were willful, and committed with malice and/or corruption and in bad faith.

102.    As a direct and proximate result of Defendant Hendren's reckless conduct, negligence, and carelessness, Katlyn Alix was killed on January 24, 2019. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

103.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

104.    As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

17

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

105.    The conduct of Defendant as described above demonstrated willful, wanton, and malicious conduct, as well as a complete indifference to or conscious disregard for the safety of Decedent and others, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

106.    Defendants do not have sovereign immunity from liability for Defendant Hendren's conduct because Defendants have purchased insurance policies to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[21] By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[22] The PFPC covers the liability of Defendants in this case.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), which is just, fair, and adequate under the

---

[21] Ex. 3, Comprehensive Annual Financial Report, p. 34
[22] Ex. 4. Letter from Julian Bush

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

circumstances, for aggravating circumstances damages, and for her costs herein expended, and for such other relief as the Court deems just under the circumstances.

**COUNT III**
**WRONGFUL DEATH—NEGLIGENCE**
**PATRICK RIORDAN**

107.   Plaintiff incorporates the above allegations as though fully set forth herein.

108.   At all times relevant, Defendant Riordan owed a duty to exercise reasonable care of ordinary prudence under the same or similar circumstances. In addition, Defendant Riordan had a non-discretionary duty to comply with SLMPD rules and regulations including but not limited to the following:

   a. Defendant Riordan, while on beat, was required to: "constantly patrol his beat, except when on special assignments," and was not allowed to "lounge, loaf or gather with others at any place."[23]

   b. Defendant Riordan was required to refrain from engaging in acts of corruption;[24]

   c. Defendant Riordan was required to refrain from engaging in "conduct unbecoming to a member which is contrary to the good order and discipline of the department," including "neglect of duty, improper performance of duty or sleeping or loafing while on duty."[25]

   d. Defendant Riordan was required to refrain from "reporting for duty in an intoxicated condition, or drinking of alcoholic beverages of any kind, while on duty."[26]

---

[23] Ex. 1, SO 2-12, p. IV-3
[24] Ex. 5, SO 1-07, p. 2
[25] Ex. 6, Police Manual (2014), Section 7.004, p. 7-1
[26] Ex. 6, Police Manual (2014), Section 7.004, p. 7-2

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

    e.  Defendant Riordan was required to log in to the GPS-based system in his department issued patrol vehicle;[27]

    f.  And such further duties imposed by SLMPD department policies, regulations, standing orders, ordinances, or statutes as discovery and the evidence will reveal.

109.  Defendant Riordan failed to exercise reasonable care thereby breaching the above duties, and violating SLMPD policies, in one or more of the following respects:

    a.  Defendant negligently and carelessly failed to patrol his beat;

    b.  Defendant negligently and carelessly consumed alcoholic beverages and/or other intoxicating substances while on duty;

    c.  Defendant negligently and carelessly failed to be "alert and attentive to the orders and instructions given" by his fellow and superior police officers;[28]

    d.  Defendant negligently and carelessly failed to report to the alarm on Manchester;

    e.  Defendant negligently and carelessly neglected his departmental duties on the night and morning of January 23 and 24, 2019;

    f.  Defendant negligently and careless failed to login to the GPS-based system in their department issued patrol vehicle on January 23, 2019;

    g.  Defendant negligently and carelessly quarreled and/or fought with Decedent;

    h.  Defendant negligently and carelessly loafed while on duty, engaging in inappropriate and reckless acts with a firearm;

    i.  Defendant negligently and carelessly failed to intervene; and

    j.  Such further negligence and carelessness as discovery and the evidence will reveal.

---

[27] Ex. 2, SO 5-32, p. 1
[28] Ex. 1, SO 2-12, p. IV-3

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

110.    Defendant Riordan's actions described above were willful, and committed with malice and/or corruption and in bad faith.

111.    As a direct and proximate result of Defendant Riordan's reckless conduct, negligence, and carelessness, Katlyn Alix was killed on January 24, 2019. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

112.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

113.    As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

114.    Defendants do not have sovereign immunity from liability for Defendant Riordan's conduct because Defendants have purchased insurance policies(s) to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[29] By possessing such insurance or self-

---

[29] Ex.3, Comprehensive Annual Financial Report, p. 34

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[30] The PFPC covers the liability of Defendants in this case.

115.    The conduct of Defendant as described above demonstrated willful, wanton and malicious conduct, as well as a complete indifference to or conscious disregard for the safety of Decedent and others, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

116.    WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), which is just, fair, and adequate under the circumstances, for aggravating circumstances damages, and for her costs herein expended, and for such other relief as the Court deems just under the circumstances.

## COUNT IV
## WRONGFUL DEATH—NEGLIGENCE
## DEFENDANT FOSTER

117.    Plaintiff incorporates the above allegations as though fully set forth herein.

118.    At all times relevant, Defendant Foster owed a duty to exercise reasonable care of ordinary prudence under the same or similar circumstances. In addition, Defendant Foster had a duty to comply with SLMPD rules and regulations including but not limited to the following:

---

[30] Ex. 4, Letter from Julian Bush

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

a. Defendant Foster was responsible and required to exercise authority and have responsibility over the officers under his supervision, including Defendants Hendren and Riordan;

b. Defendant Foster was "charged with the duty of constant vigilance over the officers assigned to his precinct"[31] including Defendants Hendren and Riordan;

c. Defendant Foster was "responsible for inspecting the officers under his supervision during roll call,"[32] including Defendants Hendren and Riordan. This included ensuring that Defendants Hendren and Riordan were properly equipped with a vehicle and signed in to the vehicle's GPS device;

d. Defendant was required to supervise his subordinates, including Defendants Hendren and Riordan, under the penalty of disciplinary action;[33]

e. Defendant was required to refer Nathaniel Hendren for drug and/or alcohol tests;

f. And such further duties imposed by SLMPD department policies, regulations, standing orders, ordinances, or statutes as discovery and the evidence will reveal.

119.    Defendant Foster failed to exercise reasonable care thereby breaching the above duties, and violating SLMPD policies, in one or more of the following respects:

a. Defendant negligently and carelessly failed supervise Defendants Hendren and Riordan;

b. Defendant negligently and carelessly failed to monitor the whereabouts of Defendants Hendren and Riordan;

---

[31] Ex. 1, SO 2-12, p. IV-2, IV-3
[32] Ex. 1, SO 2-12, p. IV-2, IV-3
[33] Ex. 1, SO 2-12, p. IV-2, IV-3

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

    c.   Defendant negligently and carelessly failed to exercise constant vigilance over Defendants Hendren and Riordan, allowing two on duty police officers under his authority to go unaccounted for nearly two hours;

    d.   Defendant negligently and carelessly failed to supervise roll call, including failing to ensure that Defendants Hendren and Riordan were properly equipped and logged in to their Vehicle's GPS device;

    e.   Defendant negligently and carelessly failed to ensure Officer Hendren was not intoxicated prior to his shift and during roll call;

    f.   Defendant negligently and carelessly neglected his departmental duties on the night and morning of January 23 and 24, 2019; and

    g.   Such further negligence and carelessness as discovery and the evidence will reveal.

120.    Defendant Foster knew that Defendant Hendren and Riordan were unaccounted for, and had no idea of their whereabouts. Defendant Foster was willfully indifferent to his mandated departmental duty to exercise constant vigilance over Defendants Hendren and Riordan. The choices were willful, and committed with malice and/or corruption and in bad faith.

121.    As a direct and proximate result of Defendant Foster's reckless conduct, negligence, and carelessness, Katlyn Alix was killed on January 24, 2019. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

122.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

123.    As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

124.    Defendants do not have sovereign immunity from liability for Defendant Foster's conduct because Defendants have purchased insurance policies(s) to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[34] By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[35] The PFPC covers the liability of Defendants in this case.

125.    The conduct of Defendant as described above demonstrated willful, wanton and malicious conduct, as well as a complete indifference to or conscious disregard for the safety of Decedent and others, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

---

[34] Ex. 3, Comprehensive Financial Report, p. 34
[35] Ex. 4, Letter from Julian Bush

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

126.    WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), which is just, fair, and adequate under the circumstances, for aggravating circumstances damages, and for her costs herein expended, and for such other relief as the Court deems just under the circumstances.

**COUNT V**
**WRONGFUL DEATH—NEGLIGENCE**
**THE CITY OF ST. LOUIS**

127.    Plaintiff incorporates the above allegations as though fully set forth herein.

128.    Defendants Nathaniel Hendren and Patrick Riordan were employees and agents for Defendant The City of St. Louis, and were at all times relevant acting within the scope and course of their employment and/or agency for Defendant The City of St. Louis.

129.    Defendants Nathaniel Hendren and Patrick Riordan were on duty for the Saint Louis Metropolitan Police Department, in uniform, equipped with department issued weapons, operating department issued vehicles, and acting on behalf of The City of Saint Louis.

130.    Katlyn Alix's death occurred as a direct and proximate result of the negligent and careless acts and/or omissions of Defendant The City of St. Louis in the following respects:

    a.  Defendant negligently and carelessly qualified Defendants Hendren and Riordan to serve as law enforcement officers for The City of St. Louis;

    b.  Defendant negligently and carelessly hired Defendants Hendren and Riordan;

    c.  Defendant negligently and carelessly retained Defendants Hendren and Riordan;

    d.  Defendant negligently and carelessly supervised Defendants Hendren and Riordan;

    e.  Defendant negligently and carelessly monitored Defendants Hendren and Riordan;

    f.  Defendant negligently and carelessly trained Defendants Hendren and Riordan; and

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

g.  Such further negligent and careless acts and omissions as the evidence and discovery will reveal.

131.  As a direct and proximate result of Defendant's reckless conduct, negligence, and carelessness, Katlyn Alix was killed on January 24, 2019. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

132.  As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

133.  As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

134.  Defendants do not have sovereign immunity from liability for their  conduct because Defendants have purchased insurance policies(s) to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[36] By possessing such insurance or self-insurance,

---

[36] Ex. 3, Comprehensive Annual Financial Report, p. 34

27

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[37] The PFPC covers the liability of Defendants in this case.

135.    The conduct of Defendant as described above demonstrated willful, wanton, and malicious conduct, as well as a complete indifference to or conscious disregard for the safety of Decedent and others, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

136.    WHEREFORE, Plaintiff prays for judgment against Defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), which is just, fair, and adequate under the circumstances, for aggravating circumstances damages, and for her costs herein expended, and for such other relief as the Court deems just under the circumstances.

### COUNT VI
### OUTRAGE—ALL DEFENDANTS

137.    Plaintiff incorporates the above allegations as though fully set forth herein.

138.    Defendants' collective conduct in this case, described herein, amounted to outrageous conduct—conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

139.    Defendants' conduct was reckless, undertaken in reckless disregard for the rights of Plaintiff, and was of such a nature to entitle the Plaintiff to an award of punitive damages in

---

[37] Ex. 4, Letter from Julian Bush

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

such sum as will serve to punish Defendant and deter Defendant, and others, from like conduct in the future

140.    Defendants do not have sovereign immunity from liability for Defendants' conduct because Defendants have purchased insurance policies(s) to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[38] By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[39] The PFPC covers the liability of Defendants in this case.

141.    Defendants conduct caused Plaintiff to suffer severe emotional distress and mental anguish.

WHEREFORE Plaintiffs pray for judgment against Defendants, inclusive, in a sum in excess of twenty-five thousand dollars ($25,000.00) together with costs herein expended, for pre-

---

[38] Ex.3, Comprehensive Annual Financial Report p. 34
[39] Ex. 4, Letter from Julian Bush

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

and post-judgment interest as provided by law, for punitive damages, and for any further relief this Court deems just and proper under the circumstances.

## COUNT VII
## PRIMA FACIE TORT
## ALL DEFENDANTS

142.    Plaintiff incorporates the above allegations as though fully set forth herein.

143.    Defendants' collective conduct in this case, described herein, was intentional, and evinced an intent to cause injury to Officer Katelyn Nicole Alix.

144.    As a result of Defendants' intentional acts, described herein, Officer Alix was killed, and Plaintiff has suffered severe and permanent injuries, harms, and damages.  Plaintiff claims all damages available to her under Missouri and Federal law.

145.    There is a complete absence of any justification, or in the alternative insufficient justification, for the Defendants' conduct in this case.

146.    Defendants' conduct was reckless, undertaken in reckless disregard for the rights of Plaintiff, and was of such a nature to entitle the Plaintiff to an award of punitive damages in such sum as will serve to punish Defendant and deter Defendant, and others, from like conduct in the future

147.    Defendants do not have sovereign immunity from liability for Defendants' conduct because Defendants have purchased insurance policies(s) to cover this liability and thereby waived sovereign immunity by insuring the liability alleged herein pursuant to § 537.610. Defendants obtain insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City of St. Louis pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City. Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2018 Comprehensive Annual Financial Report for the City of St. Louis,

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters . . . ."[40] By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo. City Counselor Julian Bush explained that the funds from the PFPC are "used for paying settlements, and the liability of the City for paying settlements, **particularly those involving police misconduct**," and that the PFPC "can be properly thought to be self-insurance."[41] The PFPC covers the liability of Defendants in this case.

WHEREFORE Plaintiffs pray for judgment against Defendants, inclusive, in a sum in excess of twenty-five thousand dollars ($25,000.00) together with costs herein expended, for pre- and post-judgment interest as provided by law, for punitive damages, and for any further relief this Court deems just and proper under the circumstances.

**COUNT VIII**
**42 U.S.C. § 1983 – Excessive Force in Violation of the Fourteenth Amendment**
**(Defendant Nathaniel Hendren, in his individual and official capacity)**

148.    Plaintiff incorporates the above allegations as though fully set forth herein.

149.    42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

---

[40] Ex.3, Comprehensive Annual Financial Report p. 34
[41] Ex. 4, Letter from Julian Bush

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

150.    Katlyn Alix was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and laws and regulations enacted thereunder. Defendant Hendren is a person under 42 U.S.C. § 1983.

151.    Defendant Hendren, at all times relevant, was acting under the color of the statutes, ordinances, regulations, customs, and laws of the State of Missouri in his capacity as a Police Officer for The City of St. Louis and his acts or omissions were conducted within the scope of his official duties or employment. Specifically,

a.  Defendant Hendren was on duty as an officer for the St. Louis Metropolitan Police Department at the time of the subject incident;

b.  Defendant Hendren was wearing his St. Louis Metropolitan Police Uniform at the time of the subject incident;

c.  Defendant Hendren drove to his home at 750 Dover Place in his department issued police vehicle;

d.  Defendant Hendren received, but refused to answer, a burglary call in the course of his employment as a St. Louis Metropolitan Police Department;

e.  Defendant Hendren abused his privilege as a police officer to drive a patrol car to his own residence for personal reasons while on duty;

f.  Defendant Hendren abused his authority as a police officer to improperly code a response to a burglary call;

g.  Defendant Hendren abused his position as a police officer in order to cause another officer to be sent to handle the burglary call;

h.  As a result of the aforementioned abuse, Katlyn Alix was put in a position of peril that caused or contributed to cause her death; and

32

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

     i.   These acts and omissions are substantially related to Officer Hendren's duties as a police officer.

152.   At the time of the incident that is the subject of the Plaintiff's complaint, Katlyn Alix had clearly established constitutional rights, including a right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

153.   Any reasonable police officer would know or should have known of these rights at the time of the complained of conduct as they were clearly established.

154.   Defendant Hendren's actions, omissions, and use of force, as described herein, was objectively unreasonable in light of the facts and circumstances confronting him and so violated the Fourteenth Amendment rights of Katlyn Alix.

155.   Defendant Hendren's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Katlyn Alix's federally protected rights. The force used by Defendant Hendren shocked the conscious and so violated Katlyn Alix's Fourteenth Amendment rights.

156.   Defendant Hendren engaged in the conduct described in this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Katlyn Alix's federally protected Constitutional rights.

157.   Defendant Hendren knew, or should have known, that his acts and omissions as described herein were prohibited under federal law.

158.   Defendant Hendren's conduct was perpetrated pursuant to the City of St. Louis's policies, customs, decisions, ordinances, regulations, widespread habit, usage, or practice.

159.   As a direct and proximate result of Defendant Hendren's interference with and violation of Katlyn Alix's federal constitutional and statutory rights, Plaintiff has suffered damages

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

and losses, including the wrongful death of her daughter, Katlyn Alix. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

160.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff is entitled to all compensatory damages available under state and federal law.

161.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

162.    As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

163.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

164.    The conduct of Defendant Hendren as described above demonstrated willful, wanton, and malicious misconduct, as well as a complete indifference to or a conscious disregard for the safety of Katlyn Alix and others, thereby justifying an award of punitive damages in such sum as will serve to punish and deter Defendant Hendren and others, from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Hendren in a fair and reasonable amount in excess of twenty-five thousand dollars ($25,000.00) for the harms and losses she has suffered, for his costs incurred here, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

## COUNT IX
### 42 U.S.C. § 1983 – Violation of Substantive Due Process Right to Bodily Integrity
### (Defendant Nathaniel Hendren, in his individual and official capacity)

165.    Plaintiff incorporates the above allegations as though fully set forth herein.

166.    42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

167.    Katlyn Alix was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and laws and regulations enacted thereunder. Defendant Hendren is a person under 42 U.S.C. § 1983.

168.    Defendant Hendren, at all times relevant, was acting under the color of the statutes, ordinances, regulations, customs, and laws of the State of Missouri in his capacity as a Police Officer for The City of St. Louis and his acts or omissions were conducted within the scope of his official duties or employment. Specifically,

   a. Defendant Hendren was on duty as an officer for the St. Louis Metropolitan Police Department at the time of the subject incident;

   b. Defendant Hendren was wearing his St. Louis Metropolitan Police Uniform at the time of the subject incident;

   c. Defendant Hendren drove to his home at 750 Dover Place in his department issued police vehicle;

   d. Defendant Hendren refused to answer a burglary call in the course of his employment as a St. Louis Metropolitan Police Department;

35

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

e.  Defendant Hendren abused his privilege as a police officer to drive a patrol car to his own residence for personal reasons while on duty;

f.  Defendant Hendren abused his authority as a police officer to improperly code a response to a burglary call;

g.  Defendant Hendren abused his position as a police officer in order to cause another officer to be sent to handle the burglary call;

h.  As a result of the aforementioned abuse, Katlyn Alix was put in a position of peril that caused or contributed to cause her death; and

i.  These acts and omissions are substantially if not wholly related to Officer Hendren's duties as a police officer.

169.    At the time of the incident that is the subject of the Plaintiff's complaint, Katlyn Alix had clearly established constitutional rights, including substantive due process right to bodily integrity, and a right not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm or death.

170.    Any reasonable person, in particularly a police officer, would know or should have known of these rights at the time of the complained of conduct as they were clearly established.

171.    Defendant Hendren's actions, as described herein, were malicious and/or involved reckless, callous, and deliberate indifference to Katlyn Alix's federally protected rights. The force used by Defendant Hendren shocked the conscious and so violated Katlyn Alix's substantive due process rights.

172.    Defendant Hendren's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Katlyn Alix's federally protected rights.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

Defendant Hendren's actions are so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience and so violated Katlyn Alix's federally protected rights.

173.   Defendant Hendren knew, or should have known, that his acts and omissions as described herein were prohibited under federal law.

174.   Defendant Hendren's conduct was perpetrated pursuant to the City of St. Louis's policies, customs, decisions, ordinances, regulations, widespread habit, usage or practice.

175.   As a direct and proximate result of the injuries and death of Decedent, Plaintiff is entitled to all compensatory damages available under state and federal law.

176.   As a direct and proximate result of Defendant Hendren's interference with Katlyn Alix's federal constitutional and statutory rights, Plaintiff has suffered damages and losses, including the wrongful death of her daughter, Katlyn Alix. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

177.   As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

178.   As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

179.   Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

180.   The conduct of Defendant Hendren as described above demonstrated willful, wanton, and malicious misconduct, as well as a complete indifference to or a conscious disregard for the safety of Katlyn Alix and others, thereby justifying an award of punitive damages in such

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

sum as will serve to punish and deter Defendant Hendren and others, from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Hendren in a fair and reasonable amount in excess of twenty-five thousand dollars ($25,000.00) for the harms and losses she has suffered, for her costs incurred here, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

## COUNT X
### 42 U.S.C. § 1983 – Failure to Intervene
### (Defendant Patrick Riordan, in his individual and official capacity)

181.   Plaintiff incorporates the above allegations as fully set forth herein.

182.   42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

183.   Defendant Riordan, at all times relevant, was acting under the color of the statutes, ordinances, regulations, customs, and laws of the State of Missouri in his capacity as a Police Officer for The City of St. Louis and his acts or omissions were conducted within the scope of his official duties or employment. Specifically,

a.   Defendant Riordan was on duty as an officer for the St. Louis Metropolitan Police Department at the time of the subject incident;

b.   Defendant Riordan was wearing his St. Louis Metropolitan Police Uniform at the time of the subject incident;

38

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

    c.  Defendant Riordan travelled to Defendant Hendren's home at 750 Dover Place in his police vehicle while on duty;

    d.  Defendant Riordan received and refused to answer a burglary call in the course of his employment as a St. Louis Metropolitan Police Department, communicating with other police officers in the course and scope of his employment;

    e.  Defendant Riordan abused his privilege as a police officer to travel in a patrol car to Hendren's residence for personal reasons while on duty;

    f.  Defendant Riordan abused his authority as a police officer to improperly code a response to a burglary call;

    g.  Defendant Riordan abused his position as a police officer in order to cause another officer to be sent to handle the burglary call;

    h.  As a result of the aforementioned abuse, Katlyn Alix was put in a position of peril that caused or contributed to cause her death; and

    i.  These acts and omissions are substantially if not wholly related to Officer Riordan's duties as a police officer.

184.    Defendant Patrick Riordan had a reasonable opportunity to prevent Officer Hendren from using excessive force against Katlyn Alix, to prevent Officer Hendren from violating Katlyn Alix's substantive due process right to bodily integrity, and to prevent Officer Hendren from violating Katlyn Alix's right not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm, had he been so inclined, but Officer Riordan failed to do so in the following ways:

    a.  Officer Riordan agreed to meet at Defendant Hendren's residence while on duty;

    b.  Officer Riordan agreed consume alcohol while on duty;

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

   c.   Officer Riordan lied to the dispatcher about the status of burglary alarm;

   d.   Officer Riordan allowed Officer Hendren to handle a loaded gun while intoxicated;

   e.   Officer Riordan observed as Hendren spun the cylinder of his revolver around while there was a bullet in it;

   f.   Officer Riordan observed as Officer Hendren "dry fired" his weapon multiple times;

   g.   Officer Riordan observed Officer Hendren act recklessly with a firearm;

   h.   Officer Riordan failed to stop Officer Hendren from pointing his gun at Katlyn Alix;

   i.   Officer Riordan allowed Officer Hendren to repeatedly pull the trigger of a loaded gun, including while it was pointed at Officer Alix;

   j.   Officer Riordan allowed Officer Hendren to shoot Officer Alix; and

   k.   Any further careless acts and omissions and the evidence and discovery will reveal.

185.   Defendant Riordan, acting with cowardice unbecoming of a law enforcement officer, deliberately failed to intervene to stop Defendant Hendren in any way.

186.   As a result of Defendant Riordan's failure to intervene, Katlyn Alix suffered severe and fatal injuries.

187.   The misconduct described in this Count by Defendant Riordan was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others, including Katlyn Alix.

188.   This failure to intervene was undertaken by Defendant Riordan within the scope of his employment and under color of law such that their employer, Defendant City of St. Louis, is liable for their actions.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

189.    As a result of Defendant Patrick Riordan's failure to intervene, Plaintiff has suffered damages and losses, including the wrongful death of her daughter, Katlyn Alix. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

190.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff is entitled to all compensatory damages available under state and federal law.

191.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur, and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

192.    As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

193.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

194.    The conduct of Defendant Riordan as described above demonstrated willful, wanton, and malicious misconduct, as well as a complete indifference to or a conscious disregard for the safety of Katlyn Alix and others, thereby justifying an award of punitive damages in such sum as will serve to punish and deter Defendant Riordan and others, from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant Riordan in a fair and reasonable amount in excess of twenty-five thousand dollars ($25,000.00) for the harms and losses she has suffered, for his costs incurred here, for attorneys' fees, for punitive damages, and for any further relief this Court deems just and proper.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

## COUNT XI
### 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Hiring, Training, Retention and Supervision in violation of the Fourteenth Amendment
### (Defendant City of St. Louis)

195.    Plaintiff incorporates the above allegations as if fully set forth herein.

196.    42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

197.    Katlyn Alix was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder. The City is a person under 42 U.S.C. § 1983

198.    The City of St. Louis and its officials, employees, agents, and representatives were, at all times relevant, acting under the color of ordinances, regulations, customs, and law of the State of Missouri.

199.    At the time of the incident that is the subject of the Plaintiff's complaint, Katlyn Alix had clearly established constitutional rights, including the right under the Fourteenth Amendment to be secure in her person from excessive force, the substantive due process right to bodily integrity, the right not to be subjected by anyone acting under color of state law to the wanton infliction of physical harm.

200.    The City of St. Louis's officials, employees, agents, and representatives knew, or should have known of these rights at the time of the complained conduct as they were clearly established.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

201.    The acts or omissions of the City of St. Louis and its officials, employees, agents, and representatives, as described herein, deprived Katlyn Alix of her constitutional and statutory rights and caused her other damages.

202.    The City of St. Louis and its officials, employees, agents, and representatives intentionally, knowingly, and purposefully deprived Katlyn Alix of her clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

203.    The City of St. Louis and its officials, employees, agents, and representatives, at all times relevant, were policymakers for the City of St. Louis and the St. Louis Metropolitan Police Department, and in that capacity, established policies, procedures, customs, and/or practices for the same.

204.    The City of St. Louis had the authority and duty to hire and retain and otherwise control the officers of the St. Louis Metropolitan Police Department, including Defendants Hendren and Riordan.

205.    The City of St. Louis, in hiring Nathaniel Hendren, acted with deliberate indifference to his known and dangerous propensities, disregarding the obvious consequences of its actions. The City of St. Louis, in hiring Nathaniel Hendren, created a substantial risk that Katlyn Alix's constitutional rights would be violated. Katlyn Alix's death at the hands of Defendant Hendren was a plainly obvious consequence of The City of St. Louis's decision to hire and retain Nathaniel Hendren as an employee police officer.

206.    The City of St. Louis had the authority to train, supervise, discipline, and otherwise control the officers of the St. Louis Metropolitan Police Department, including Defendants Hendren and Riordan.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

207.   The City of St. Louis had a duty to train police under its employ and/or supervision, including Defendants Hendren and Riordan.

208.   The City of St. Louis had a duty to provide reasonable training to prevent the police officers in its employ and/or under its supervision from wrongfully applying excessive force to Katlyn Alix in violation of the Fourteenth Amendment to the United States Constitution, to prevent police officers in its employ and/or under its supervision from violating citizen's rights to bodily integrity, to prevent police officers in its employ and/or under its supervision from wantonly subjecting citizen's to needless physical harm and death.

209.   The City of St. Louis failed to train, inadequately trained, or negligently trained the police officers in its employ and/or under its supervision as described in the proceeding paragraphs in a manner that a reasonable city would have under the circumstances.

210.   The City of St. Louis and its officials, employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Katlyn Alix's Constitutional rights as set forth herein.

211.   The City of St. Louis and its officials, employees, agents, and representatives have developed and maintained long-standing department-wide customs, policies, procedures, and practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Katlyn Alix and the public. The inadequacy of training and/or supervision is so likely to result in violation of Constitutional and federal rights, such as those described herein, that the failure to provide proper training and supervision is indifferent to those rights.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

212.    The deliberately indifferent training and supervision provided by the City of St. Louis and its officials, employees, agents, and representatives resulted from a conscious and deliberate choice to follow a course of action from among various alternatives available to it and were moving forces in the constitutional and federal violation injuries complained of by the Plaintiff.

213.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff is entitled to all compensatory damages available under state and federal law.

214.    As a direct and proximate result of the City of St. Louis's interference with and violation of Katlyn Alix's federal Constitutional and statutory rights, Plaintiff has suffered damages and losses, including the wrongful death of her daughter, Katlyn Alix. Katlyn suffered severe and needless discomfort, pain, and mental anguish from the time she was shot until her death.

215.    As a direct and proximate result of the injuries and death of Decedent, Plaintiff was required to expend, incur and become indebted for medical and other expenses. Further, Plaintiff has forever lost the love, services, consortium, comfort, instruction, guidance, counsel, and support of Decedent. In addition, Plaintiff is entitled to all damages that Decedent sustained before her death for which she would have been entitled to recover had she lived.

216.    As a result of her injuries and death, Decedent lost wages and her mother and father have lost the benefit of future wages and support.

217.    Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiff prays for judgment against the City of St. Louis in a fair and reasonable amount in excess of twenty-five thousand dollars ($25,000) for the harms and losses

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

she has suffered, for her costs incurred herein, for attorneys' fees, and for any further relief this

Court deems just and proper.


DATED: October 9, 2019                    Respectfully Submitted,

                                          **THE SIMON LAW FIRM, P.C.**

                                          By: /s/ John M. Simon
                                              John G. Simon, # 35231
                                              John M. Simon, #68393
                                              800 Market Street, Suite 1700
                                              St. Louis, Missouri  63101
                                              P:  (314) 241-2929
                                              F:  (314) 241-2020
                                              jsimon@simonlawpc.com
                                              jmsimon@simonlawpc.com

                                              and

                                          **ROSENBLUM, SCHWARTZ, & FRY, P.C.**

                                          By: /s/ N. Scott Rosenblum
                                              Scott Rosenblum, # 33390
                                              Alec Rosenblum, # 69467
                                              Cole Rosenblum, # 72098
                                              120 S. Central Avenue, Suite 130
                                              St. Louis, Missouri 63105
                                              P: (314) 862-4332
                                              F: (314) 862-8050
                                              srosenblum@rsflawfirm.com
                                              arosenblum@rsflawfirm.com
                                              crosenblum@rsflawfirm.com

                                          *Attorneys for Plaintiff*

**In the**

# CIRCUIT COURT

## City of St. Louis, Missouri

Aimee L. Wahlers, individually and as the surviving mother of
Decedent, Katlyn Nicole Alix, deceased
_____
Plaintiff/Petitioner

vs.

Nathaniel Hendren, et al.
_____
Defendant/Respondent

For File Stamp Only

10/9/2019
_____
Date

_____
Case number

_____
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiff _____, pursuant

Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of

| Mark Smith of Markell & Associates, Inc. | 2300 West Port Plaza Dr., St. Louis, MO | 314-469-5555 |
|---|---|---|
| Name of Process Server | Address | Telephone |
| | | |
| Name of Process Server | Address | Telephone |
| | | |
| Name of Process Server | Address | Telephone |

to serve the summons and petition in this cause on the below named parties.

SERVE:
Nathaniel Hendren
_____
Name
1915 Olive Street
_____
Address
St. Louis, MO 63103
_____
City/State/Zip

SERVE:
Sergeant Gary Foster
_____
Name
1915 Olive Street
_____
Address
St. Louis, MO 63103
_____
City/State/Zip

SERVE:
Patrick Riordan
_____
Name
1915 Olive Street
_____
Address
St. Louis, MO 63103
_____
City/State/Zip

SERVE:
The City of St. Louis
_____
Name
c/o Julian Bush - 1200 Market, Room 314
_____
Address
St. Louis, MO 63103
_____
City/State/Zip

Appointed as requested:

**TOM KLOEPPINGER,** Circuit Clerk

By _____
   Deputy Clerk

10/9/19
_____
Date

/s/ John M. Simon
_____
Attorney/Plaintiff/Petitioner
68393
_____
Bar No.
800 Market Street, Ste. 1700, St. Louis, MO 63101
_____
Address
(314) 241-2929
_____
Phone No.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**1922-CC11675**

## METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS
## OFFICE OF THE POLICE COMMISSIONER
## SPECIAL ORDER

| | | | |
|---|---|---|---|
| **Date Issued:** | November 10, 2016 | **Order No.:** | SO 2-12 |
| **Effective Date:** | November 10, 2016 | **Expiration:** | Indefinite |
| **Reference:** | Civil Service Rule 1 | | |
| **CALEA Standards:** | 11.1.1; 11.1.2; 15.1.1; 42.1.4; 44.1.1; 45.2.1; 46.2.1.b | | |
| **Cancelled Publications:** | Sections V of SO 2-12, issued March 9, 2016 | | |
| **Subject:** | DEPARTMENT ORGANIZATION AND FUNCTIONAL RESPONSIBILITIES | | |
| **To:** | ALL BUREAUS, DISTRICTS AND DIVISIONS | | |

PURPOSE:  To provide information concerning the organization and functional responsibilities of the Department.

By Order of:

D. Samuel Dotson

D. SAMUEL DOTSON
Colonel
Police Commissioner



PLAINTIFF'S
EXHIBIT

**1**

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

SO 2-12

B.  PATROL AREAS

1.  Organization of the Patrol Areas

   a.  South Patrol Area, consisting of the First and Second Police Districts;

   b.  Central Patrol Area, consisting of the Third and Fourth Police Districts;

   c.  North Patrol Area, consisting of the Fifth and Sixth Police Districts; and

   d.  Station Executive Officer, with responsibility for Desk operations, and Station operations.

2.  Responsibilities of the Patrol Areas

   Providing for the systematic patrol of the city under such patrol plans as may be adopted by the Police Commissioner; prevention and suppression of crime; prompt response to citizen calls for assistance; arrest of law violators; protection of life and property; preservation of the peace; identification and attempted resolution of problems that have the potential to become more serious problems for citizens, the police, or the government; enforcement of traffic laws and ordinances; and performing such specific duties and maintaining such operations as Orders of the Police Commissioner may specify.

3.  Responsibilities of the Patrol Area Commanders

   Patrol Area Commanders report directly to the Deputy Commander, Bureau of Enforcement, and are responsible for the operation of the Districts under their command and for ensuring that the Orders of the Police Commissioner are obeyed with uniform interpretation in each of the Districts in the Patrol Area.

4.  Responsibilities of the District Commanders

   District Commanders are responsible for all matters pertaining to the operation of their District, and are accountable for the actions of all members of the Department assigned to their District.

5.  Responsibilities of the District Platoon Commanders

   District Platoon Commanders exercise authority and have responsibility over the Sergeants and Officers of their platoon.  When the District Commander is off duty, the Platoon Commander has the same authority and responsibility for the operation of the District as the District Commander.  Duties of a Platoon Commander include, but are not limited to: supervision of roll call, with inspection of Officers going on duty, being concerned with the appearance of Officers, their equipment, and their knowledge of their assignments and duties; and continuing observation of the performance of their Sergeants and Officers during their hours of duty.  The Platoon Commander is responsible for the institution of disciplinary action, via established procedures, when violations of policies or improper conduct are observed by him/her or brought to his/her attention.

6.  Responsibilities of the District Sergeants

   Sergeants assigned to a Police District are assigned by the District Commander to a platoon as a Precinct Sergeant, relief Precinct Sergeant, or other authorized position.  District

## SO 2-12

Sergeants exercise authority and have responsibility over the Officers under their supervision. Each Precinct Sergeant is:

a.  Charged with the duty of constant vigilance over the Officers assigned to his/her precinct;

b.  responsible for inspecting the Officers under his/her supervision during roll call to insure they are properly uniformed and equipped and present an acceptable appearance; and

c.  responsible for providing leadership, guidance, and assistance to his/her subordinates at all times; constantly observing their duty performance, demeanor, and conduct; and taking the necessary corrective action when he/she encounters deficiencies. Failure to properly supervise subordinates will be cause for disciplinary action against the Sergeant.

7.  Responsibilities of the District Police Officers

Each Police Officer, in discharge of assigned duties, exercise authority consistent with the obligations imposed by his/her oath of office, and are accountable to his/her Supervising Officers for performance of duty. Each Police Officer will:

a.  Constantly be aware that his/her basic function is patrol of his/her assigned beat to accomplish the prevention and suppression of crime, arrest law violators, protect life and property, and preserve peace;

b.  constantly patrol his/her beat, except when on special assignments, and not lounge, loaf, or gather with others at any place;

c.  report to the Area Station at the time appointed and attend roll call, being alert and attentive to the orders and instructions given;

d.  supervise and inspect all public and licensed places in his/her beat, enforcing the laws, ordinances, and regulations concerning their operation;

e.  devote the maximum possible time to the performance of his/her basic duty of patrol, remaining in the Area Station only when necessary;

f.  examine and inspect the patrol vehicle, if one is assigned, at the beginning of his/her tour of duty; during the tour of duty, he/she will operate the vehicle in a safe manner, avoiding hazardous or careless operation; if involved in an accident, he/she will report the matter promptly;

g.  make reports, conforming with established procedures, on all matters coming to his/her attention that require reporting;

h.  ensure the civil treatment and the observance of the rights of all persons with whom he/she has contact;

i.  be accountable for the securing, receipting, and proper transporting of all evidence and property coming into his/her custody;

1922-CC11675

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

## METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS
## OFFICE OF THE CHIEF OF POLICE
## SPECIAL ORDER

| | | | |
|---|---|---|---|
| **Date Issued:** | **April 13, 2015** | **Order No.:** | **SO 5-32** |
| **Effective Date:** | **April 13, 2015** | **Expiration:** | **Indefinite** |

**Reference:**

**CALEA Standards:**

**Cancelled Publications:**

**Subject:**      **USE OF THE AUTOMATIC VEHICLE LOCATION SYSTEM**

**To:**      **ALL BUREAUS, DISTRICTS AND DIVISIONS**

<u>PURPOSE</u>:  To provide guidelines for the use of the Automatic Vehicle Location (AVL) system in Department patrol vehicles.

By Order of:

*D. Samuel Dotson*

D. Samuel Dotson
Colonel
Chief of Police

PLAINTIFF'S
EXHIBIT

**2**

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS**
**OFFICE OF THE CHIEF OF POLICE**
**SPECIAL ORDER**

| | | | |
|---|---|---|---|
| **Date Issued:** | April 13, 2015 | **Order No.:** | SO 5-32 |
| **Effective Date:** | April 13, 2015 | **Expiration:** | Indefinite |

**Reference:**

**CALEA Standards:**

**Cancelled Publications:**

**Subject:**      USE OF THE AUTOMATIC VEHICLE LOCATION SYSTEM

**To:**           ALL BUREAUS, DISTRICTS AND DIVISIONS

PURPOSE:  To provide guidelines for the use of the Automatic Vehicle Location (AVL) system in Department patrol vehicles.

A.   INTRODUCTION

    1.   The Automatic Vehicle Location (AVL) system is a GPS-based system which provides the location of a police vehicle as well as the vehicle's speed.

    2.   The AVL system reports data into the Computer Aided Dispatch (CAD) system and tracks the locations of police vehicles by using a time and/or distance formula according to the unit's status.

    3.   Up-to-date information about the location of AVL equipped patrol vehicles is available for view through I/Dispatcher, I/Mobile, and I/Netviewer in real time.

    4.   The AVL system will be utilized for officer safety and the efficient deployment of Police services.

B.   AVL USAGE

    1.   Patrol Vehicles

        a.   Officers assigned to a patrol vehicle equipped with AVL are required to login to I/Mobile.

        b.   Officers are prohibited from tampering with, or disabling the AVL system, including the intentional manipulation of any software or hardware in any way to prevent the proper functioning of the AVL system.  Any tampering, disabling, or intentional manipulation of the AVL system could result in disciplinary action.

    2.   Dispatchers

        a.   All Dispatchers will receive training on the AVL system (in I/Dispatcher) coordinated by the Communications Division Training Supervisor.

        b.   Dispatchers will track the location of patrol vehicles in the CAD system.

1922-CC11675

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM





# 2018
Comprehensive
Annual Financial Report
City of St. Louis, Missouri





Fiscal Year Ended June 30

PLAINTIFF'S
EXHIBIT

3

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**CITY OF ST. LOUIS, MISSOURI**

Notes to Basic Financial Statements

June 30, 2018

(Dollars in thousands)

**(1) Summary of Significant Accounting Policies**

The City of St. Louis, Missouri (the City) is a constitutional charter city not a part of any county, which is organized and exists under and pursuant to the constitution and laws of the State of Missouri (the State). The City's current form of government is provided for in its charter, which first became effective in 1914 and has been subsequently amended by City voters. The City provides a wide range of municipal services as follows: fire, police, and other public safety; parks and recreation; forestry; health, welfare, and other social services; street maintenance; refuse collection; public services; community and economic development; convention and tourism; and general administrative services. The City also owns and operates a water utility, parking facilities, and an international airport as self-supporting enterprises.

The accounting policies and financial reporting practices of the City conform to U.S. generally accepted accounting principles applicable to governmental entities. The following is a summary of the more significant policies:

*Reporting Entity*

The City's financial reporting entity has been determined in accordance with governmental standards for defining the reporting entity and identifying entities to be included in its basic financial statements. The City's financial reporting entity consists of the City of St. Louis (also referred to as the Primary Government) and its component units.

**1) Blended Component Units**

The component units discussed below are included in the City's reporting entity due to the significance of their operational or financial relationships with the City.

*Public Facilities Protection Corporation (PFPC)*

The PFPC is an internal service fund governed by a five-member board of persons in designated City positions. The PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters, including workers' compensation.

*St. Louis Municipal Finance Corporation (SLMFC)*

The SLMFC, established in 1991, is governed by a five-member board, consisting of persons in designated City positions. The SLMFC is reported as if it were part of the primary government because its sole purpose is to lessen the burden on the City by financing, acquiring, leasing, or subleasing real property, and improvement thereon, and personal property to the City.

*St. Louis Parking Commission Finance Corporation (SLPCFC)*

The SLPCFC, established in 2003, is governed by a five-member board as appointed by the Parking Commission. The SLPCFC finances the purchase of and owns, leases, and sells certain real property on behalf of the Parking Commission. SLPCFC is considered to be a component unit of the City because the Parking Division of the City of St. Louis (the Parking Division) is financially accountable for SLPCFC, as it appoints all of SLPCFC's directors and is able to impose its will on SLPCFC. The SLPCFC provides services entirely to the Parking Division and is reported as if it were part of the

34                                                                                          (Continued)

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM



# CITY OF ST. LOUIS
## LAW DEPARTMENT
**1200 MARKET STREET, ROOM 314**
**ST. LOUIS, MO 63103-2864**
**(314) 622-3361**

**JULIAN L. BUSH**
**CITY COUNSELOR**

**LYDA KREWSON**
**MAYOR**

January 31, 2018

Alderwoman Megan E. Green
Board of Aldermen
Room 230, City Hall
St. Louis, MO 63103

  RE:  City's Self-Insurance Fund (PFPC)

Dear Alderwoman Green:

  Michael Garvin has forwarded your email to him requesting insight concerning the City's self insurance fund, "something called a PFPC," the funds used for paying settlements, and the liability of the City for paying settlements, particularly those involving police misconduct.  I will try to satisfy your inquiry concerning these very interesting matters.

  First, what is a PFPC?  The Public Facilities Protection Corporation of City of St. Louis is a not for profit corporation incorporated on November 20, 1986.  Its articles of incorporation state that the purpose of the corporation is "to implement a program which will assure the continuing provision of municipal and governmental services by various public facilities and functions in the St. Louis metropolitan area which facilities are placed in jeopardy by escalating costs and exposures to exceed fiscal abilities." PFPC's current by-laws provide that the board is self-perpetuating, but they also provide that the Mayor, the President of the Board of Aldermen, the Comptroller, the Budget Director, and the City Counselor of the City of St. Louis or their respective designees are the directors.  On September 16, 1987, the City's Board of Estimate and Apportionment adopted a resolution approving the "City of St. Louis Risk Management Program." Among many other things, the program imposed a duty on the City to annually appropriate funds into a "Risk Trust Fund" to be administered by PFPC, which was made responsible for administering that fund and payment of all claims, given its purpose to "insure the City against all claims."

  It is my understanding that over the years PFPC has, just as the September 16, 1987 plan approved by the Board of Estimate and Apportionment provided, paid claims against the City for damages.  In addition to paying claims against the City, it has paid

PLAINTIFF'S
EXHIBIT

4

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

Alderwoman Megan E. Green
1/31/2018
Page 2 of 3

claims against City employees, other public employees, and also claims against other
public corporations and not for profit corporations.  It has also contracted with lawyers,
has entered into contracts with the circuit court to provide "liability coverage," and it has
entered into contracts with other public corporations to provide workers compensation
insurance.  It is my further understanding that each year the city's budget ordinance
contains two line-item in the Law Department's budget styled "PFPC Contribution," one
under the heading "City Counselor," and the other under the heading "City Counselor-
Police Unit."  During the fiscal year, and from time to time, the Comptroller issues
warrants on those two accounts for the sums of money appropriated (this year $2,000,000
in the general line-item and $1,000,000 in the police unit line item), and the treasurer
transfers those sums to PFPC.  PFPC uses the sums so transferred to pay judgments
against the City and its employees generally, including those arising from the operations
of the Division of Police and from the operations of the old Saint Louis Metropolitan
Police Department, to the extent that the latter are not paid out of the State Legal Expense
Fund.  In addition, I understand that from time to time the Comptroller transfers
additional sums of money from various city budgets relating to workers compensation
and for surety bond premiums and insurance, and PFPC also receives revenues from
other public entities for which it provides workers compensation coverage.  Another
source of PFPC revenue are payments made by the State in fulfill its obligation to
reimburse for payments made to satisfy judgments and settlements arising from the days
when the now defunct St. Louis Metropolitan Police Department was the  police force
serving the City.  And from time to time additional funds are transferred to PFPC from
general city revenues, as the need arises.  During the course of a budget year when
settlements are reached and judgments are rendered against the City and City employees,
the City Counselor requests that those settlements and judgments be paid by PFPC, and
PFPC pays those settlements and judgments.  In any event, the current Board of Directors
of PFPC comprises Beth Seright, Paul Payne, Nancy Kistler, Todd Waelterman, and Tom
Shepard, all city employees, and the current officers are Ms. Kistler, its president, Mr.
Waelterman, its vice-president, Mr. Shepard, its secretary, and Mr. Payne, its treasurer.

Is the City self-insured?  Self-insurance is "[t]he practice of setting aside a fund to
meet losses instead of insuring against such through insurance."  Black's Law Dictionary,
6th ed.  In 1979 Ordinance 57821, now codified as sections 4.12.030 and 4.12.040 of the
City Code, was approved.  Ordinance 57821 purports to adopt a self-insurance plan
applicable to claims arising from motor vehicle accidents with motor vehicles operated
by City employees and from the dangerous condition of property owned by the City.  The
self insurance plan that the ordinance adopts is not described, and the ordinance by its
terms only applies to claims relating to motor vehicles and property, and not to the
myriad other claims that might be and are brought against the City, and by its terms is
limited to claims for $100,000 for a single occurrence and $50,000 for a single person.
This ordinance states that it was adopted pursuant to section 537.610.1 RSMo, but the
limits of liability provided in that statute have since been raised without a commensurate
modification of the ordinance.  So perhaps the ordinance ought to be revisited.  But, in
any event, the appropriations made each year in the law department and other budgets

Alderwoman Megan E. Green
1/31/2018
Page 3 of 3

directed at PFPC and workers compensation can be properly thought to be self-insurance.

      The first full fiscal year that the City's Division of Police operated as the successor to the St. Louis Metropolitan Police Department was the fiscal year that began July 1, 2014, which is known as FY15.  I understand (I have obtained these figures from Beverly Fitzsimmons of the Comptroller's office) ) that the sums that PFPC has paid out that fiscal year and the two subsequent fiscal years now complete generally and those arising from the police force activities specifically are the following.  For FY15: $1,806,766 for non-police activities, $125,983 for Division of Police activities, and $1,320,825 for St. Louis Metropolitan Police Department activities.  For FY16 $1,669,402 for non-police activities, $176,869 for Division of Police activities, and $816,914 for St. Louis Metropolitan Police Department activities.  For FY17, $1,691,954 for non-police activities, $807,302 for Division of Police activities, and $1,060,000 for St. Louis Metropolitan Police Department activities.

      I hope that this responds adequately to your inquiry.

            Very truly yours,

            Julian L. Bush
            City Counselor

JLB:dl

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**1922-CC11675**

### METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS
### OFFICE OF THE POLICE COMMISSIONER
### SPECIAL ORDER

| | | | |
|---|---|---|---|
| **Date Issued:** | **March 9, 2016** | **Order No.:** | **SO 1-07** |
| **Effective Date:** | **March 9, 2016** | **Expiration:** | **Indefinite** |

**Reference:**

**CALEA Standards:**      **1.1.1; 1.1.2; 12.2.1**

**Cancelled Publications:**      **POLICE MANUAL Statement on the Value of Human Life; Mission Statement; Law Enforcement Code of Ethics; and Civilian Code of Ethics, issued February 26, 2014**

**Subject:**      **MISSION, VALUES,  CODES OF ETHICS, AND OATH OF OFFICE**

**To:**      **ALL BUREAUS, DISTRICTS AND DIVISIONS**

PURPOSE:  To establish the mission statement, values, ethics, and oath of office for the Department.

By Order of:

*D. Samuel Dotson*

D. SAMUEL DOTSON
Colonel
Police Commissioner

PLAINTIFF'S
EXHIBIT

5

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**METROPOLITAN POLICE DEPARTMENT – CITY OF ST. LOUIS**
**OFFICE OF THE POLICE COMMISSIONER**
**SPECIAL ORDER**

| | | | |
|---|---|---|---|
| **Date Issued:** | **March 9, 2016** | **Order No.:** | **SO 1-07** |
| **Effective Date:** | **March 9, 2016** | **Expiration:** | **Indefinite** |
| **Reference:** | | | |
| **CALEA Standards:** | **1.1.1; 1.1.2; 12.2.1** | | |

**Cancelled Publications:**  **POLICE MANUAL Statement on the Value of Human Life; Mission Statement; Law Enforcement Code of Ethics; and Civilian Code of Ethics, issued February 26, 2014**

**Subject:**  **MISSION, VALUES, CODES OF ETHICS, AND OATH OF OFFICE**

**To:**  **ALL BUREAUS, DISTRICTS AND DIVISIONS**

PURPOSE: To establish the mission statement, values, ethics, and oath of office for the Department.

A.  MISSION STATEMENT  **(12.2.1.a)**

The mission of the St. Louis Police Department is to protect, serve, and assist citizens when conditions arise that may affect the well-being of the individual or the community. Cooperating with others in the community, officers will work to prevent and detect crime, protect life and property, and achieve a peaceful society, free from the fear of crime and disorder. Members of the Department will strive continually for excellence and maintain the peace through service, integrity, leadership, and fair treatment to all.

B.  STATEMENT ON THE VALUE OF HUMAN LIFE  **(12.2.1.a)**

1.  The primary responsibility of this Department and each of its members is to protect the lives of the citizens we are sworn to serve. It is also the duty of each member of the Department to honor the established principles of democracy upon which this country was founded. Among these principles is the most profound reverence for human life, the value of which far exceeds that of any property. It is essential that every action of this Department and of each of its members be consistent with that responsibility.

2.  In recognition of the commitment by this Department to preserve human life, and because of the public trust empowering sworn police officers to lawfully exercise force – even deadly force, when required – in carrying out that commitment, it is hereby declared to be the policy of this Department that (1) the use of deadly force will never be condoned as a routine response; and (2) police officers will exercise the highest degree of care in the application of such force.

C.  LAW ENFORCEMENT CODE OF ETHICS  **(1.1.2)**

1.  As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

1

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

**SO 1-07**

2.     I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency.  I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others.  Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department.  Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

3.     I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions.  With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

4.     I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service.  I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers.  I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

5.     I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

6.     I will constantly strive to achieve these objectives and ideals, dedicating myself to my chosen profession . . . law enforcement.

D.    <u>CIVILIAN CODE OF ETHICS</u>  **(1.1.2)**

As an employee of the St. Louis Metropolitan Police Department, I regard myself as a member of an important and honorable profession.

1.     I will strive to keep myself in the best physical and mental condition at all times.

2.     I will perform my duties with efficiency and to the best of my ability.

3.     I will be truthful at all times.  My conduct and performance of duties will be accomplished in an honest manner and in compliance with all laws local, State, and Federal.

4.     I will keep secret, unless revelation is necessary in the performance of my duty, whatever I see or hear of a confidential nature or that is confided to me in my official capacity.

5.     I will not, in the performance of my duties, work for unethical advantage or personal profit.

6.     I will recognize at all times that I am public safety employee and that ultimately I am responsible to the public.

7.     I will strive to give the most efficient and impartial service of which I am capable at all times.

8.     I will be courteous in all my contacts at all times.

9.     I will always regard my fellow employees with equality, dignity, and respect.

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

Issued:  February 26, 2014
Effective:  February 26, 2014

# P O L I C E M A N U A L

## METROPOLITAN POLICE DEPARTMENT

### City of Saint Louis, Missouri

## COLONEL D. SAMUEL DOTSON

### Chief of Police

Published

by the

## BOARD OF POLICE COMMISSIONERS

## 2010

**(Includes all revisions published through February 26, 2014)**



PLAINTIFF'S
EXHIBIT

6

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

Issued:  April 17, 2013
Effective:  April 17, 2013

# RULE 7

## COMPLAINT AND DISCIPLINARY PROCEDURES

**Section  7.001    Department Policy**

The purpose of this rule is to establish a system of complaint and disciplinary procedures which will maintain the integrity of the Department by insuring a prompt and fair disposition of complaints.   The procedures will subject the Department member to corrective action if improper conduct is evident, and will protect those who discharge their duties properly.

**Section 7.002    Applicability**

The procedures apply to all commissioned members of the Department and, where applicable, to civilian employees.

**Section 7.003    Scope of the Rule**

A.    The provisions of this rule shall apply to complaints from the following sources:

    1.    those complaints reported to supervisory officers by members of the Department;

    2.    those resulting from observation by supervisory or commanding officers;

    3.    those made, reported or filed by private citizens or citizen groups;

    4.    those referred to the Department by any person or agency;

    5.    those uncovered during the course of a complaint investigation; and

    6.    those resulting during the course of litigation.

**Section 7.004    Standards of Conduct (26.1.1)**

A.    A member of the Department shall be subject to disciplinary action for the violation of the rules of conduct set forth by the Department as described herein.   These rules of conduct are neither intended to cover every situation, nor be exclusive of any other Department directive or pronouncement by the Board of Police Commissioners, the Chief or his delegates, or of a superior officer.

B.    Every member of the Department shall, at all times, maintain reasonable standards of courtesy in his/her relations with the public and with other members of the Department and shall conduct him/herself in such a manner that no discredit will be brought upon the Department in general or him/herself in particular.

C.    Acts contrary to good conduct shall include, but not be  limited to, the following:

    1.    Conviction of a felony, misdemeanor or ordinance violation under any statute or ordinance.   A conviction includes a finding of guilt by the trier of fact, a guilty plea, an Alford plea and/or any acknowledgement of guilt (Suspended Execution/Imposition of Sentence).

    2.    Use of controlled substances not medically prescribed.

    3.    Any conduct unbecoming to a member which is contrary to the good order and discipline of the Department, on or off duty.   For example, such conduct shall include, but not be limited to:

        a.    Withdrawing or resigning or absenting him/herself from duty without leave, or failing to report for duty at his/her regularly appointed time.  **Each day an employee is absent from duty without leave is considered an offense**;

        b.    Neglect of duty, improper performance of duty or sleeping or loafing while on duty;

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

c.     Accepting anything of value for permitting/ignoring illegal acts;

d.     Using an official position for personal gain;

e.     Failing to obey a reasonable order of a superior officer;

f.     Insubordination or disrespect toward a superior officer;

g.     Abuse of subordinates by superior officers;

h.     Reporting for duty in an intoxicated condition or drinking of alcoholic beverages of any kind, while on duty, or while in any part of the uniform which would readily identify the individual as a member of the Metropolitan Police Department;

i.     Knowingly associating, on or off duty, with convicted criminals or lawbreakers under circumstances which could bring discredit upon the Department or impair an officer in the performance of his/her duty;

j.     Any conduct detrimental to the public peace or welfare;

k.     Failing to take appropriate action, on or off duty, when an incident requiring action comes to the attention of a police officer;

l.     Any member being under felony indictment;

m.     Fighting and/or quarreling with Department member while either on or off duty, which would bring discredit upon the Department or disrupt the work place is prohibited.

n.     Ingestion/consumption of medication, medicinally prescribed to another.

o.     Failure to ensure the civil treatment and the observance of rights of all persons that he/she has contact with (Uncivil Treatment);

p.     Failure to make reports in conformity with established procedures, on all matters that come to his/her attention that require reporting (Failure to Make Required Report); and

q.     Appearing in a Board Trial or Summary Hearing for the purpose of providing expert/opinion-based testimony without permission of the Chief of Police.

4.    In dealing with the public – advising, procuring or in any other manner seeking to solicit the employment of any attorney to prosecute or defend a civil suit or defend criminal proceedings.

5.    Receiving money, gifts, gratuities, rewards or compensation for services rendered or expenses incurred, except while engaged in approved secondary employment, without consent of the Board.

6.    Soliciting, collecting or receiving money or other things of value for charitable, gift or testimonial purposes, while in uniform or on duty, or when representing oneself as an employee of the St. Louis Police Department, without consent of the Board.

7.    Soliciting for attorneys, bondsmen or other business persons for personal gain.

8.    Borrowing, obtaining, receiving, soliciting or accepting any money, securities, property, other valuable thing, or credit or guarantee of credit either directly or indirectly from any person under investigation or against whom a complaint has been made or an arrest warrant has been issued or in official custody or free on bond or any relative or employee of such persons.

**1922-CC11675**

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM



## DEPARTMENT OF PERSONNEL ADMINISTRATIVE

## REGULATION NO. 120 (B)

## DRUG & ALCOHOL TESTING PROGRAM

## (NON-DOT)

*Revised & Reissued: January 31, 2014*

**I.    TABLE OF PROVISIONS**                                                                 **PAGE**

I.      Table of Provisions ..................................................................................... 1
II.     Purpose ....................................................................................................... 2
III.    Policy .......................................................................................................... 2
IV.     Drug-Free Workplace ................................................................................. 2
V.      Employee Assistance Program .................................................................... 2
VI.     Definitions .................................................................................................. 2
VII.    Prohibited Alcohol Use .............................................................................. 6
VIII.   Prohibited Drug Use ................................................................................... 7
IX.     Knowledge/Disclosure of Drug and Alcohol Use ...................................... 7
X.      Drug and Alcohol Testing Circumstances .................................................. 7
        A.    Pre-Employment/Promotional or Return from Seasonal Leave
              or Lay Off Testing ............................................................................ 7
        B.    Reasonable Suspicion Testing ......................................................... 8
        C.    Random Testing ............................................................................... 8
        D.    Return-to-Duty Testing .................................................................... 9
        E.    Follow-Up Testing ........................................................................... 9
XI.     Test Referral Procedure .............................................................................. 9
XII.    Sample Collection and Retesting ................................................................ 10
XIII.   Test Results and Consequences ................................................................... 11
XIV.    Documentation ............................................................................................ 13
XV.     Unscheduled and Agency-Specific Testing ................................................ 14
XVI.    Prescription Drugs ...................................................................................... 14
XVII.   Requirements for Agencies Receiving Federal Funds ................................ 14
XVIII.  Confidentiality ............................................................................................ 15

PLAINTIFF'S
EXHIBIT

7

Electronically Filed - City of St. Louis - October 09, 2019 - 12:05 PM

C.   Possession of alcoholic beverages in the workplace is prohibited, and will result in disciplinary action up to and including dismissal.

## VIII.   PROHIBITED DRUG USE:

Employees are prohibited from using drugs during on-duty periods except when used pursuant to the instructions of a licensed medical practitioner who has advised the employee that the drug (s) will not adversely affect the employee's ability to safely perform the duties of his or her position. The unlawful possession, use, distribution, dispensation, manufacture or sale of controlled substances is prohibited, whether at the workplace or elsewhere.

## IX.   KNOWLEDGE/DISCLOSURE OF DRUG AND ALCOHOL USE:

A.   Supervisors and managers who have knowledge that an employee has used drugs or alcohol in a manner prohibited under Sections VII and VIII of this regulation, or is under the influence of drugs or alcohol must refer the employee for drug and/or alcohol tests. Failure to make the referral is a violation of the City's policy on drugs and alcohol, and cause for disciplinary action.

B.   Employees who voluntarily disclose a problem with drugs or alcohol to a supervisor or manager or who submit a Family and Medical Leave request for substance abuse treatment must be placed on leave and given a mandatory referral to the E.A.P. for assessment, treatment and/or referral. *It will not be considered voluntary disclosure if said disclosure occurs on the date an employee is notified that he/she will be required to submit to an alcohol and/or drug test or following the administration of said test(s).* Employees must return to duty within twelve (12) weeks (XIII. E.) may return to work only after they are declared ready to do so by the E.A.P. and test negative on "Return to Duty" drug and/or alcohol tests. After an employee has returned to duty, he/she will be subject to follow-up testing, and monitored for compliance with the prescribed treatment plan by the Substance Abuse Professional for at least one (1) year (or longer if so determined by the SAP).

## X.   DRUG AND ALCOHOL TESTING CIRCUMSTANCES:

Employees and applicants for employment with the City of St. Louis may be tested for drugs and/or alcohol in accordance with the provisions of this regulation. Listed below are the conditions and/or circumstances under which non-DOT tests will be required.

A.   Pre-Employment/Promotional or Return from Seasonal Leave Testing

Candidates for positions that have been designated for testing by the Director of Personnel must be issued a Drug Evaluation Notice and referred for a pre-employment or promotional drug test. Testing of all candidates must be authorized by the Drug and Alcohol Program Administrator or his/her designee. Only candidates who test negative